UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN MORRIS and
LOUISE MORRIS,

                Plaintiffs,                No. 06-CV-13484-DT

vs.                                         Hon. Gerald E. Rosen

HOMEOWNERS LOAN CORP.,
and FIRST UNION MORTGAGE CORP.,

                Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, WITH PREJUDICE**

I. INTRODUCTION

On September 8, 2006, this Court ordered Plaintiffs Marvin and Louise Morris to show cause, in writing, why Defendant Homeowners Loan Corporation's August 28, 2006 motion to dismiss with prejudice, and/or, in the alternative, to compel arbitration, should not be granted. Having reviewed the parties' subsequent submissions and the record as a whole, the Court has decided to dismiss the case, with prejudice. This Opinion and Order sets forth the Court's ruling.

II. FACTUAL AND PROCEDURAL BACKGROUND

On October 27, 2003, Plaintiffs Marvin and Louise Morris ("the Morrises"), through counsel, filed an action in Wayne County Circuit Court against Defendants Homeowners Loan Corporation ("Homeowners") and its assignee, First Union Mortgage Corporation ("First

1

Union"),[1] complaining about the October 20, 2000 refinancing of their residential mortgage through Defendant Homeowners. In their Complaint, Plaintiffs alleged violations of the federal Homeowners Equity Protection Act (HOEPA) and the Michigan Consumer Protection Act (MCPA), as well as Michigan common law claims of fraud, unauthorized practice of law and violation of public policy. The case was subsequently removed to this Court on February 25, 2004. *See Morris v. Homeowners Loan Corporation, et al.,* 04-70706.

On May 17, 2004, Plaintiffs stipulated that, pursuant to an "Agreement for the Arbitration of Disputes" ("Arbitration Agreement" or "the Agreement") entered into by the parties on October 20, 2000, they were required to arbitrate all of the claims alleged in their lawsuit and, therefore, further stipulated to the dismissal of their case, without prejudice. Accordingly, on May 18, 2004, this Court entered an Order of Dismissal, dismissing Plaintiffs' complaint, without prejudice. Plaintiffs, however, never pursued arbitration.

On September 16, 2004, Plaintiffs filed a voluntary petition for bankruptcy protection in the Eastern District of Michigan. Plaintiffs, however, did not disclose their claims against Defendant in the asset schedule or any other bankruptcy filings. On December 9, 2004, Judge Tucker of the bankruptcy court entered an Order confirming Plaintiffs' plan of bankruptcy reorganization, which constituted the final decision of the bankruptcy court.

Nearly two years later, on August 2, 2006, Plaintiffs, acting *pro se*, re-filed in this Court the very same complaint that they had previously filed in state court in October 2003.[2] In response, on August 28, 2006, Defendant Homeowners filed a "Motion to Dismiss, with

---

[1] First Union is now known as Wachovia Mortgage Corporation.

[2] Absent from the second complaint is the MCPA claim.

2

prejudice, and/or, in the alternative, to Compel Arbitration" claiming (1) that the parties have already stipulated, and the Court has already ordered, that Plaintiffs are required to arbitrate all of the issues raised in their complaint; (2) that even if arbitration is not required, Plaintiffs are estopped from pursuing their claims because they failed to disclose them in their bankruptcy filings; and (3) that Plaintiffs' HOEPA and unauthorized practice of law claims are barred by the applicable statutes of limitations.

On September 8, 2006, this Court ordered Plaintiffs Marvin and Louise Morris to show cause in writing why relief requested by Defendants should not be granted. On October 2, 2006, Plaintiffs submitted a Response to Defendant's motion. In their Response, Plaintiffs argue (1) that they are not bound by the arbitration agreement because the agreement was not disclosed to them; (2) that they are not bound by the stipulation to dismissal without prejudice signed by the attorney who represented them in the earlier complaint; and (3) that because they have alleged fraud in connection with a contractual transaction, Plaintiffs can avoid the one-year HOEPA statute of limitations and that the six-year statute of limitations applicable to contracts should apply to their HOEPA claim. On October 9, 2006, Homeowners submitted a reply brief, denying the merit of the Plaintiffs' arguments.

Plaintiffs thereafter submitted a supplemental response on December 5, 2006, arguing that (1) the arbitration agreement is void ab initio because the contract to refinance was formed fraudulently, (2) the Court has pendant jurisdiction over Plaintiffs' state common law claims notwithstanding the arbitration agreement; and (3) Plaintiffs were not obligated to disclose their claims against Homeowners in their bankruptcy filings because their original lawsuit against Homeowners was dismissed before Plaintiffs filed for bankruptcy. Defendant refuted these

arguments in its sur-reply of December 12, 2006.

## III. DISCUSSION

In assessing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court must treat all well-pleaded allegations in the complaint as true. *Moon v. Harrison Piping Supply, et al.*, 458 F.3d 719, 723 (6th Cir. 2006) (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 638 (6th Cir.2001)). Dismissal is proper if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Id.* Legal conclusions or unwarranted factual inferences, however, should not be accepted as true. *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 405-06 (6th Cir.1998). Such motions allow the Court to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. *See, e.g., Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

### A.    THE STIPULATED ORDER OF DISMISSAL

Defendant first argues that Plaintiffs should be judicially estopped from pursuing this action because they stipulated to this Court's Order of Dismissal. The Court agrees.

The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position "either as a preliminary matter or as part of a final disposition." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir.1990).

This Court's dismissal of Plaintiffs' substantive claims in the first complaint was without prejudice, so the Order of Dismissal does not constitute a final disposition on the merits of those claims. However, with respect to the question of what forum Plaintiffs may have them heard in,

the Order of Dismissal requiring arbitration constitutes a final disposition. By stipulating to the Order of Dismissal, Plaintiffs took the position that this matter should be resolved by arbitration. Bringing the same claims back to this Court is adopting a position contrary to Plaintiffs' earlier stipulation. Therefore judicial estoppel bars them from doing so.

Plaintiffs argue that because they are alleging fraud in the formation of the contract, the original refinancing document is void ab initio. The Court finds it has already made this determination in the negative. Where there is a broad agreement to arbitrate, even claims that the commercial contract which is the subject of the dispute was fraudulently induced are subject to arbitration. *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003). It is thus within the Court's power to find that a claim of fraud is arbitrable, and in this case, it has done so. The fraud claim in the present case is the same fraud claim that was brought in the earlier case. The court has already ordered that all claims be arbitrated. Plaintiffs stipulated to that ruling, and were, therefore, required to arbitrate all their claims, including the fraud claim.

Plaintiffs accuse their former attorney, Joon H. Sung, of acting in his self-interest in stipulating to the Order of Dismissal on their behalf. "Pursuant to Michigan law, when a client holds his attorney out as counsel representing him in a matter, 'the client clothes the attorney with apparent authority to settle claims connected with the matter.'" *Capital Dredge & Dock Corp. v. Detroit*, 800 F.2d 525, 530 (6th Cir. 1986). Plaintiffs do not deny that they held Mr. Sung out as counsel representing them in this matter. While Plaintiffs may not have liked the outcome of the previous lawsuit, it appears Mr. Sung, in stipulating to the Order of Dismissal on the Plaintiffs' behalf, took the most legally responsible route available, given Plaintiffs' interests,

Plaintiffs' obligations under the Arbitration Agreement, and the facts presented. In any event, Mr. Sung is not a party to this lawsuit, and Defendant, having no affiliation with him, cannot be expected to answer for his actions.

Plaintiffs argue that the Court has pendent jurisdiction over Plaintiffs' common law claims not withstanding the Arbitration Agreement. That this Court has pendent jurisdiction over common law claims related to claims that raise a federal question is not in dispute. However, this fact does not save claims that are barred on the grounds of judicial estoppel, contractual obligation, res judicata or statutes of limitations, so it is irrelevant.

B.      THE ARBITRATION AGREEMENT

The Court finds that even if the stipulated Order of Dismissal were not binding on Plaintiffs, they would still be bound by the Arbitration Agreement. According to Defendant, the Arbitration Agreement covers all the Plaintiffs' claims. Nowhere in Plaintiffs' Response or Supplemental Response do Plaintiffs deny this, or provide any factual basis for such a denial. The scope of the Arbitration Agreement is characteristically broad, covering any:

> claim, controversy, disagreement or lawsuit of any nature whatsoever arising out of or in any way related to the loan; the arranging of the loan; any application, inquiry or attempt to obtain the loan; the closing and funding of the loan; the terms of the loan; any loan documents; the servicing, collecting and enforcing of the loan; or any other aspect of the loan transaction.

(*See* Ex. 2. to Def. Br. in S. of Mot. to Dis., p. 1.) The Court finds that Plaintiffs' claims are covered by the Arbitration Agreement.

The Arbitration Agreement has Plaintiffs' signatures on it. Plaintiffs do not deny signing it. The Court finds that Plaintiffs signed the Arbitration Agreement.

Plaintiffs claim that the Arbitration Agreement was not disclosed to them, despite the fact

6

that they signed it.  The Arbitration Agreement is a freestanding document called "Agreement For The Arbitration of Disputes".  It is less than three pages long.  Directly above the signature lines, where Plaintiffs' signatures appear, the Agreement states in bold and capitalized print,

> **READ THE ABOVE ARBITRATION AGREEMENT CAREFULLY.  IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION.**

(*See* Ex. 2. to Def. Br. in S. of Mot. to Dis., p. 3.)  Plaintiffs have provided no set of facts by which to explain the dubious theory that they signed a short, self-identifying, self-explanatory document without knowing about it.  The Court, therefore, finds Plaintiffs' non-disclosure claim meritless.

According to Defendant, the Plaintiffs' signatures on the Arbitration Agreement make it enforceable against them, such that they are required to resolve their grievances in arbitration, not in this Court.  Plaintiffs argue that because there was fraud in the formation of the contract, the Arbitration Agreement is void ab initio.

The law of contracts distinguishes between fraud in the factum and fraud in the inducement.  *See* Restatement (Second) Contracts § 163.  According to contract law there is fraud in the factum:

> "[i]f a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract..."

*Id.*  Essentially, fraud in the factum means there never was a contract, because there never was mutual assent between the parties, so the contract is void ab initio.  *Id.*

Fraud in the factum has consequences for arbitration agreements, as well.  The Federal

Arbitration Act ("FAA") provides that, with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that "the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue."  9 U.S.C. § 4.  From this language, the Supreme Court has determined that a federal court may adjudicate fraud which "goes to the 'making' of the agreement to arbitrate," -- fraud in the factum -- but a "claim of fraud in the inducement," falls within the scope of the arbitration agreement, and is a matter to be resolved by the arbitrators, not the federal courts.  *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 87 S. Ct. 1801 (1967).  *See also Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 575 (6th Cir. 2003).  In other words, the only question this Court would have to decide with regard to the arbitration agreement -- if  Plaintiffs' claims are not barred for other reasons -- is whether there was fraud in the factum, i.e., lack of mutual assent of the parties.  This is easily accomplished in this case.

The most common expression of assent to a contract is well known.  Generally "one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions."  *DeOrnellas v. Aspen Square Management, Inc.*, 295 F. Supp. 2d 753, 764 (E.D. Mich. 2003).  Furthermore, "the failure to read or understand an agreement is not cause for avoiding same."  *Carpenter v. American Excelsior Co.,* 650 F. Supp. 933, 937 (E.D. Mich 1987).

Plaintiffs signed the Arbitration Agreement.  Plaintiffs are not illiterate, they do not offer any theory of having been excusably ignorant of the contents of the Arbitration Agreement, or that Defendant misled them about its contents, nor do they provide any factual basis to support any such theories.  The Court finds a valid contract, and, therefore, no fraud in the factum.

Contrary to Plaintiffs' assertions, the Arbitration Agreement is not void ab initio, and any further claims of fraud in the inducement fall within the scope of arbitrability.

C.      THE BANKRUPTCY FILING

Whether or not Plaintiffs are barred by the Arbitration Agreement and the stipulated Order of Dismissal from seeking redress in this Court, Defendant contends that judicial estoppel and res judicata principles bar Plaintiffs from pursuing their claims at all, because they failed to disclose them in their bankruptcy filings.  With respect to the non-disclosure in bankruptcy issue, the Court finds that Plaintiffs' claims are barred by res judicata, but not by judicial estoppel.

Res judicata requires that a claim be dismissed where there is evidence of:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Kane v. Magna Mixer Co.*, 71 F3d 555, 560 (6th Cir. 1995).

Any claims that exist when a claimant files for bankruptcy become part of the bankruptcy estate.  *See* 11 U.S.C. § 541(a)(1).  The "confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings." *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992).  Such confirmation "has the effect of a judgment by the district court." *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th Cir. 1991).

Judge Tucker's order confirming Plaintiffs' plan of bankruptcy reorganization on December 9, 2004, constituted a final decision on the merits of all claims Plaintiffs could have brought in district court up to that time, including the claims brought in the first lawsuit.  The parties and cause of action in the present case are the same as those in the earlier one.  Therefore,

res judicata applies to the present case.

Plaintiffs argue that because the previous case was dismissed without prejudice before they filed for bankruptcy, their claims are preserved. As Defendant points out, this is wrong as a matter of law.

Res judicata principles bar relitigation of "any issues raised *or that could have been raised* in the confirmation proceedings." *Chattanooga*, 930 F.2d at 463 (emphasis added). At any time between the Order of Dismissal and their filing for bankruptcy, Plaintiffs could have arbitrated their claims. In fact, Plaintiffs stipulated to the dismissal of the original lawsuit without prejudice precisely for the purpose of preserving their claims for arbitration. Plaintiffs did not arbitrate their claims before filing for bankruptcy. All the elements of Plaintiffs' claims continued to exist up to the date of their bankruptcy filing. Their failure to disclose them at that time had the effect of final judgment on those claims, and under res judicata principles, the present case must be dismissed.

The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position "either as a preliminary matter or as part of a final disposition." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir.1990). Plaintiffs' failure to raise or list claims as assets in their Disclosure Statement constitutes the position that no such claims exist. The Plaintiffs' reasserting the same claims in this Court is contrary to that position. The bankruptcy court's confirmation of the Plaintiffs' reorganization plan constituted a final disposition on those claims. Under *Teledyne*, there is a prima facie case for judicial estoppel.

However, in the context of bankruptcy filings the Sixth Circuit has ruled that judicial

estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence. *Browning v. Levy,* 283 F.3d 761, 776. (6th Cir. 2002). A debtor's failure to disclose a cause of action in a bankruptcy proceeding could be deemed inadvertent where the debtor lacked knowledge of the factual basis of the undisclosed claims, or had no motive for concealment. *Id.*

The facts presented in this case are the same facts Plaintiffs presented in the original complaint. Plaintiffs thus knew the factual basis of their claims at the time of bankruptcy. Whether Plaintiffs had motive for concealment is not as clear, however. It certainly is not true that the Morrises' claims fare any better under the law -- in this Court or any other -- for having not been disclosed in bankruptcy. In fact, res judicata extinguishes them. It is also unlikely the Morrises expected that non-disclosure of their claims in bankruptcy court would do anything to conceal them from *this* Court, the very court that heard them the first time. Mr. and Mrs. Morris take the (albeit mistaken) position that a cause of action not pending before the Court need not be disclosed, and may be relitigated later. While this argument could be seen as evidence that Plaintiffs chose not to disclose in order to gain an advantage, it is also possible that Plaintiffs, lacking legal counsel, honestly believed that the non-pending status of their case, rather than non-disclosure, was what afforded them another day in court. Since there remains reasonable doubt as to the Plaintiffs' motive for non-disclosure, the Court will not judicially estop their claims on that basis.

D.  STATUTES OF LIMITATIONS

Defendant cites statutes of limitations as barring Plaintiffs' HOEPA and unauthorized practice of law claims. HOEPA's statute of limitations is one year. 15 U.S.C. § 1640(e). The

11

unauthorized practice of law claim falls under Michigan's catch-all statute of limitations of three years.  M.C.L. § 600.5805.  Plaintiffs claim that because they are alleging fraud, the six-year statute of limitations on contracts should apply to their HOEPA claim.  However, Plaintiffs cite no authority to support this theory.  The Court finds that the HOEPA and unauthorized practice of law claims are limited by their respective statutes of limitation.

The Sixth Circuit has held that the HOEPA statute of limitations can be equitably tolled in cases involving fraudulent concealment.  *See Jones v. The Transohio Savings Ass'n.*, 747 F.3d 1037, 1043 (6th Cir. 1984).  But even where a defendant has fraudulently concealed a HOEPA violation, the tolling only lasts until "the date on which the borrower discovers or had reasonable opportunity to discover the fraud . . . ." *Id.*  Even allowing that Plaintiffs had not discovered the HOEPA violations until October 27, 2003, when they first alleged them, and equitable tolling continued during the pendency of the action, HOEPA's statute of limitations would still have expired on May 17, 2005, one year after the Court entered the stipulated Order of Dismissal.  Plaintiffs did not file the present action until August 4, 2006.  The Court finds that Plaintiffs' HOEPA claims are barred by HOEPA's one-year statute of limitations.

Plaintiffs' unauthorized practice of law count relates to the preparation of documents that occurred on or before October 20, 2001.  The Court finds that Michigan's three-year catch-all statute of limitations barred this claim on October 20, 2004.

E.     ATTORNEY'S FEES AND COSTS

Defendant argues that, pursuant to the Arbitration Agreement, Plaintiffs should pay Defendant's attorney's fees and costs.  Plaintiffs are silent on this matter.

Federal courts generally observe the "American rule" that, "absent express statutory

12

language or an enforceable contract, litigants pay their own attorneys' fees." *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616 (1975).  In this case, however, there is an enforceable contract.  The Arbitration Agreement provides that "[i]f either party . . . fails to submit to arbitration following a proper demand to do so, that party shall bear all costs and expenses, including reasonable attorney's fees, incurred by the other party compelling arbitration."  (*See* Ex. 2. to Def. Br. in S. of Mot. to Dis., p. 2.)

Plaintiffs signed the Arbitration Agreement.  Defendants requested that they submit their claims to arbitration voluntarily.  Plaintiffs later stipulated to the Order of Dismissal, which required that they arbitrate their claims in accordance with the Arbitration Agreement.  Plaintiffs had the opportunity after the Order of Dismissal to submit their claims to arbitration.  They failed to take that opportunity.  In bringing these claims back to this Court, Plaintiffs have breached their obligations under the Agreement, they have defied this Court's Order, and they have forced Defendant to bring this motion.  The Court holds Plaintiffs responsible for reimbursing Defendant's fees and costs, in accordance with their obligations under the Arbitration Agreement.

F.      RULE 11

Defendant further argues that attorneys' fees and costs also be granted on the grounds that Plaintiffs' Complaint is frivolous and warrants Rule 11 sanctions.  However, Defendants failed to submit their sanctions motion separately and have given no indication that they followed the "safe harbor" provisions as required under Fed. R. Civ. P. 11(c)(1)(A).  Therefore, the Rule 11 motion is denied.

IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant's August 28, 2006 Motion to Dismiss with Prejudice is GRANTED.  Accordingly,

IT IS FURTHER ORDERED that this case be DISMISSED, WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiffs shall pay Defendant's fees and costs. Defendant may submit an itemized, verified affidavit of reasonable fees and costs within ten (10) days of this Order.  Plaintiffs will have ten (10) days thereafter to file any objections.[3]


                             s/Gerald E. Rosen
                             Gerald E. Rosen
                             United States District Judge

Dated:  February 28, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 28, 2007, by electronic and/or ordinary mail.

                             s/LaShawn R. Saulsberry
                             Case Manager

---

[3] The alternative motion to compel arbitration is moot.

14